In the Matter of SOLOMON GAVRIN, an Attorney, Respondent.

First Department, March 17, 1939.

*S. C. Lewis* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*Perlo & Salamon*, for the respondent.

MARTIN, P. J. Mendel Peiletowitz, a resident of New York, died some time prior to July, 1929, leaving a widow and two children residing in Europe. He left an estate in New York city, of which the public administrator obtained letters of administration. It consisted of $7,800, which was deposited in the Bank of United States. The respondent was retained by one Moses Schatzkes on behalf of the heirs to obtain the moneys in the estate and remit same to the heirs. To this end a power of attorney was executed to him by the heirs on June 18, 1931. In the meantime the Bank of United States had failed. Thereafter, however, the bank declared various dividends aggregating $5,064.50.

On June 8, 1932, an order of the surrogate was entered directing the public administrator to pay the respondent the sum of $750. That order was obtained upon the respondent's representations that the heirs at law of the estate were penniless and at the point of starvation. On November 22, 1932, a similar order was obtained directing the payment to the respondent of $2,100 for the heirs. After the public administrator's accounting, he issued his checks for $1,031.69, representing the balance of the estate moneys in his hands, to the order of the heirs or the respondent as attorney in fact. Thereafter, additional dividends were declared by the bank and paid to the respondent, namely, $394.27 on December 3, 1934, $394.27 on December 21, 1935, and $394.27 on June 14, 1937. With the exception of the last-mentioned amount, of which the respondent, upon the insistence of Mr. Schatzkes, remitted $339 to the heirs in July, 1937, and the sum of $1,600, which he had from time to time sent the heirs, he converted to his own use, as soon as received, all the moneys above mentioned.

After the matter was brought before the Bar Association and a hearing had before its grievance committee, two brothers of the respondent paid to a substituted attorney in fact for the heirs the sum of $1,000 and gave him a series of $50 promissory notes payable monthly for an additional $2,000 in settlement of their claim for the unpaid balance of the moneys received by the respondent as aforesaid. Of these, four notes aggregating $200 had been paid at the time of the hearings.

The respondent's explanation of his failure to remit the money to his clients, notwithstanding it had been obtained upon his representation of their dire need, was that he had been directed by Mr. Schatzkes to retain all but the small amounts remitted until such time as he was advised by him. The reason given was the

desirability of holding the balance for a dowry for the unmarried daughter of the widow. Mr. Schatzkes denied he ever gave any such direction. The evidence confirms this denial.

The respondent's explanation of his application of the money to his own use as soon as received was that Mr. Schatzkes told him he might use it if he wanted to, but that he should be prepared to remit whenever requested. The latter explanation was given on cross-examination when pressed for admissions that he had used the money as soon as obtained. It clearly was an afterthought and wholly false. In fact, to the respondent's knowledge, Mr. Schatzkes had no authority to permit its use or retention.

In further support of his claim that he was authorized to retain the money, the respondent put in evidence a letter written by the widow subsequent to the hearings before the Bar Association, in which she states that she once wrote him that the money should be kept in a bank in America to the amount of $2,000 or $3,000, to be forwarded at once when requested. Even if it be assumed that this lends some color to the explanation of his failure to remit the money upon its receipt, clearly it did not authorize the respondent to apply it to his own use.

This is not the first instance in which the respondent has been found delinquent in his professional capacity. He has been suspended twice heretofore. In December, 1934, he was suspended for one year for filing a false answer in a litigation in which he was a defendant. This he did for the purpose of hindering and delaying the collection of a note for $3,500 given by him for an amount borrowed from a client. In that action the respondent interposed a counterclaim for $3,200 for legal services rendered his client in a foreclosure action. These services the court found, as matter of fact, to have been of the reasonable value of but $150. The trial resulted in a judgment for the respondent's client in the sum of $3,350. No part thereof was paid by the respondent. Instead, he filed a petition in bankruptcy and named his client as a creditor. (*Matter of Gavrin*, 242 App. Div. 490.)

The respondent was also suspended in March, 1936, for six months for his failure, fairly and fully, to advise a client of the true situation as to a mortgage investment of $4,850 which he made on her behalf and for withholding facts which, if disclosed, would have resulted in her refusal to invest or continue her investment in the mortgage in question. As a result, the equity of his client in the mortgaged property was lost upon foreclosure of a subsequent mortgage to which the respondent induced her to subordinate her mortgage. The respondent, thereafter, personally made payments to his client whereby her loss was reduced to the

sum of $800 after crediting against the indebtedness certain amounts received by her by way of bonus and interest. (*Matter of Gavrin*, 246 App. Div. 397.)

The respondent thus appears to be an habitual offender. He seems to be without any realization of the ethics of his profession. He should be disbarred.

TOWNLEY, DORE, COHN and CALLAHAN, JJ., concur.

Respondent disbarred.